## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

MID-CONTINENT CASUALTY COMPANY,
a foreign corporation, and GREAT AMERICAN
INSURANCE COMPANY, a foreign
corporation,

        Plaintiff,

Case No: 3:09cv565|WS|MD

vs.

C-D JONES AND COMPANY, INC., a Florida
corporation, and THOMAS O. DAAKE, Sr. and
ADALE Z. DAAKE, Florida residents,

        Defendants.        /

### COMPLAINT FOR DECLARATORY RELIEF

Mid-Continent Casualty Company ("MCC") and Great American Insurance Company

("GAIC") sue Defendants, C-D Jones and Company, Inc. ("C-D Jones") and Thomas O. Daake,

Sr. and Adale Z. Daake (the "Daakes"), and allege:

### NATURE OF ACTION

1.     This is an action for declaratory relief, pursuant to 28 U.S.C. §§2201 and 2202,

for the purpose of determining a question of actual controversy between the parties.

### JURISDICTION AND VENUE

2.     Jurisdiction in this Court is proper, pursuant to 28 U.S.C. §1332(a), since the

amount in controversy exceeds $75,000, exclusive of interest and costs, and this civil action is

between citizens of different states.

3.     Venue is proper in the Northern District of Florida, pursuant to 28 U.S.C. §1391(a), since the subject insurance policy was issued, delivered, and incepted in Destin, Florida. Further, the subject property is located in Destin, Florida.

4.     All conditions precedent to the institution of this action have occurred, been performed or have been waived.

### THE PARTIES

5.     The Plaintiff, MCC, is an Ohio corporation with its principal place of business in Tulsa, Oklahoma.

6.     The Plaintiff, GAIC, is an Ohio corporation with its principal place of business in Cincinnati, Ohio.

7.     The Defendant, C-D Jones, is a Florida corporation, and a citizen of the State of Florida with its principal place of business in Walton County, Florida.

8.     The Defendants, the Daakes, are  citizens of the State of Florida.

### FACTUAL ALLEGATIONS

9.     On September 4, 2002, the Daakes and C-D Jones entered into a construction contract (the "Contract") wherein C-D Jones, as the general contractor, agreed to build a home for the Daakes (the "Home"). A copy of the Contract is attached as Exhibit "A."

10.     C-D Jones was terminated as general contractor on May 13, 2004.

11.     On June 23, 2004, the Daakes entered into a construction contract with the second general contractor, A.F.A.B. Contractors, Inc. ("A.F.A.B."), to work on the Home.

12.     In or about November 2004, A.F.A.B. was terminated and, thereafter, the Daakes contracted with Silver Sands Development, Inc. a/k/a Decks-N-Such ("Decks-N-Such") to work on the Home.

2

13.     Upon information and belief, Decks-N-Such worked on the Home from January 2005 to February 2006 when it ceased work on the Home for nonpayment. Thereafter, MTM Carpentry completed the Home.

14.     In or about May 2004, C-D Jones recorded a claim of lien on the Home for approximately $280,936.30.

15.     The Daakes recorded a notice of contest of lien. Thereafter, C-D Jones filed suit to enforce the lien.

16.     The Daakes subsequently filed a second action against their second contractor A.F.A.B., and other subcontractors.   This case was consolidated with the suit C-D Jones previously filed to enforce the lien.

17.     On October 15, 2007, the Daakes filed a counterclaim (the "Counterclaim") against C-D Jones and others in the Circuit Court of the First Judicial Circuit, in and for Walton County, Florida, Case No. 04-CA-000438 ("Underlying Action"). A copy of the Counterclaim is attached as Exhibit "B," without exhibits. Upon information and belief all parties already have a copy of all of the exhibits to the Counterclaim.

18.     The Daakes' Counterclaim arises from the construction of the Home for breach of contract, Count I; breach of implied warranty, Count II; violation of building code under §553.84, Fla. Stat., Count III; and fraudulent lien, Count IV.

19.     In their Counterclaim and at trial, the Daakes asserted that C-D Jones breached the contract by:

     a.     Failing to properly and timely to perform the work of the Contract;

     b.     Failing to properly supervise the work of its agents and independent contractors related to the Contract;

3

c.    Failing to properly construct the Home in accordance with the plans and specifications or the applicable building codes and ordinances, which defects have been discovered in, without limitation, the foundation, framing, electrical system, plumbing system, heating and ventilation system, roof, stucco exterior, and pool;

d.    Making unilateral and authorized changes to the contract documents including without limitation the schedule of values;

e.    Substituting inferior materials without the knowledge or authorization of the Daakes;

f.    Failing to staff the project with adequate or competent personnel;

g.    Failing to deliver to the Daakes the documentation required by the Contract, including without limitation lists of subcontractors and suppliers, proof of insurance, and daily log books;

h.    Failing to provide a true and accurate accounting of payments by the Daakes;

i.    Persistently and rapidly refusing and failing to supply enough properly skilled workers and proper materials;

j.    Failing to make payment to subcontractors for materials or labor in accordance with the respective agreements between C-D Jones and the subcontractors;

k.    Persistently disregarding laws, ordinances, or rules, regulations or orders of a public authority having jurisdiction; and

l.    Otherwise materially failing to comply with the terms and conditions of the Contract.

20.    C-D Jones tendered the Daakes' Counterclaim to MCC for a defense.

4

21.    MCC defended C-D Jones throughout the entire underlying litigation and continues do so on appeal subject to a reservation of rights.

22.    The Home received its certificate of occupancy ("CO") on May 25, 2007, a copy of which is attached as Exhibit "C."

23.    The Underlying Action was tried on June 25, 2009.

24.    At trial, testimony was presented to the jury that the damages were first discovered by either A.F.A.B., the Daakes, and/or others, prior to the completion of construction of the Home.

25.    Circuit Court Judge W. Howard LaPorte granted C-D Jones' motion for directed verdict as to Count II (breach of warranties) because no implied warranties arise until the construction is complete.

26.    On July 2, 2009, a jury returned a verdict for the Daakes and against C-D Jones in the amount of $3,073,464.65 for breach of contract (Count I in the Counterclaim), $1,745,587.62 (Count III of Counterclaim), and $100,000 for punitive damages (under Count IV, Counterclaim). A copy of the verdict is attached as Exhibit "D."

27.    On November 3, 2009, Judge LaPorte entered an Order on C-D Jones' motion for judgment notwithstanding the verdict as to Count III (violation of building code) finding that there can be no violation of the building code in an incomplete building as a matter of law. A copy of the Order is attached as Exhibit "E."

28.    On October 1, 2009, the court entered a final judgment (the "Final Judgment") in the amount of $5,196,707.67. The Final Judgment amount was comprised of: Principal $3,073,464.75 (breach of contract claim), Prejudgment Interest $1,672,891.07, Consequential Damages $723,851.85 (delay damages $80,200, construction loan interest during delay period

5

$406,331.24, and prejudgment interest $237,320.61). In addition, the Daakes received $100,000 for punitive damages. An amount of $373,500 was credited for settlement funds received. A copy of the Final Judgment is attached as Exhibit "F."

29.     Further, the underlying court determined that the Daakes were entitled to attorney's fees, but the amount has not yet been determined.

30.     On October 30, 2009, C-D Jones appealed the verdict against it for breach of contract.

31.     On November 9, 2009, the Daakes crossed appealed.

32.     The Daakes are proper parties as their rights may be affected by this Court's declaration.

## POLICY PROVISIONS

33.     MCC issued several primary commercial general liability policies of insurance (the "Primary Policies") to C-D Jones. These policies are:

Policy No. 04-GL-000110981, from 1/28/03 to 1/28/04, with limits of $1,000,000 each occurrence, $2,000,000 general aggregate,

Policy No. 04-GL-000535657, from 1/28/04 to 1/28/05, with limits of $1,000,000 each occurrence, $2,000,000 general aggregate,

Policy No. 04-GL-000576134, from 1/28/05 to 1/28/06, with limits of $1,000,000 each occurrence, $2,000,000 general aggregate,

34.     GAIC and MCC issued several excess policies of insurance (the "Excess Policies") to C-D Jones. These policies are:

GAIC Excess Policy No. GUM 1575, from 1/28/03 to 1/28/04, with limits of $5,000,000 general aggregate and $10,000 Self Insured Retention ("SIR") for each occurrence;

MCC Excess Policy No. 04 XS 130632, from 1/28/04 to 1/28/05, with limits of $5,000,000 general aggregate and $10,000 SIR for each occurrence;

MCC Excess Policy No. 04 XS 136699, with limits of $5,000,000 general aggregate and $10,000 SIR for each occurrence.

Copies of the policies are attached as Composite Exhibit "G."

### *GENERAL LIABILITY PRIMARY POLICIES*

*MCC 04-GL-000110981*
*MCC 04-GL-000535657 (renewal)*
*MCC 04-GL-000535657 (renewal)*

35.     The MCC Primary Policies contain the following pertinent insuring agreement:

**1.     Insuring Agreement**

   a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   (1)     The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

   (2)     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

   b.     This insurance applies to "bodily injury" and "property damage" only if:

   (1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   (2)     The "bodily injury" or "property damage" occurs during the policy period; and

   (3)     Prior to the policy period, no insured listed under Paragraph 1. of Section **II** – Who is An Insured and no "employee" authorized by

7

you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.   If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

* * *

36.     The MCC Primary Policies contain the following pertinent exclusions:

**2.     Exclusions**

This insurance does not apply to:

**a.     Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion dose not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

* * *

**b.     Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the 'bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party

8

against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\* \* \*

**j.    Damage To Property**

"Property damage" to:

\* \* \*

**(5)**    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)**    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products completed operations hazard".

\* \* \*

**m.    Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

\* \* \*

37.    The MCC Primary Policies include the following pertinent definitions:

**8.**    "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

9

    **a.**    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.**    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

    **a.**    The repair, replacement, adjustment or removal of "your product" or "your work"; or

    **b.**    Your fulfilling the terms of the contract or agreement.

* * *

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

**16.**    "Products-completed operations hazard":

    **a.**    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)**    Products that are still in your physical possession; or

    **(2)**    Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        **(a)**    When all of the work called for in your contract has been completed.

        **(b)**    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        **(c)**    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

10

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

\* \* \*

38.    The MCC Primary Policy no. 04-GL-000110981 contains the following endorsement:

### EXCLUSION – DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **1.** of **Section 1 – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

#### 2. Exclusions

This insurance does not apply to:

#### 1. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

\* \* \*

## *EXCESS POLICIES*

### *GAIC Excess Policy No: GUM 1575*

39.    GAIC excess policy no. GUM 1575 contains the following pertinent insuring agreement:

\* \* \*

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1.    Insuring Agreement

**a.**    We will indemnify the **insured** for **ultimate net loss** in excess of the **retained limit** because of **bodily injury** or **property damage** to which this insurance applies. **We** will have the right to associate with the **underlying insurer** and the **insured** to defend any **claim** or **suit** seeking damages for **bodily injury** or **property damage** to which this insurance applies. but:

**(1)**    The amount **we** will indemnify for **ultimate net loss** is limited as described in Item 3-LIMIT OF INSURANCE;

**(2)**    **We** have a right to defend any **claims** or **suits** to which this insurance applies but which are not covered by any **underlying insurance** shown in the Declarations; **we** also have the right to defend such **claims** or **suits** if the applicable limit of **underlying insurance** is exhausted;

**(3)**    At **our** discretion, **we** may investigate any **occurrence** and settle any **claim** or **suit** that **we** have a right to defend; and

**(4)**    **Our** right to defend any existing or future **suits** end when **we** have exhausted the applicable Limit of Insurance in indemnification of judgments or settlements under Coverages A and B.

No other obligation or liability to indemnify or perform acts or services is covered unless explicitly provided for under SECTION II-DEFENSE.

**b.**    It is agreed that:

\* \* \*

**(3)**    Damages because of **bodily injury** include damages sought by any person or organization for care or loss of services resulting at **any time from the bodily injury;**

**(4)** The **bodily injury** or **property damage** must be caused by an **occurrence;** and

**(5)** The **occurrence** must take place in the **coverage territory**.

(Form MU 6001 (01-98), p. 1 of 17.)

40.    GAIC excess policy no. GUM 1135 contains the following pertinent exclusions:

**2.    Exclusions**

This insurance does not apply to:

**b.**    Bodily injury or property damage for which the insured is obligated to pay damages by reason of the assumption or liability in a contract or agreement.  This exclusion does not apply to liability for damages:

(1) Assumed in contract or agreement that is an **insured contract** provided the **bodily injury** or **property damage** occurs subsequent to the execution of the contract or agreement; or

(2) The **insured** would have in the absence of the contract or agreement.

* * *

**k.    Property damage** to:

(1)  Property **you** own;
(2)  Premises **you** sell, give away or abandon, if the **property damage** arises out of any part of those premises;
(3)  That particular part of real property on which **you** or any contractor or subcontractor working directly or indirectly on **your** behalf is performing operations, if the **property damage** arises our of those operation; or
(4)  That particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are **your work** and were never occupied, rented or held for rental by **you.**

Paragraph (3) and (4) of this exclusion do not apply to liability assumed under a railroad sidetrack agreement.

Paragraph (4) of this exclusion does not apply to **property damage** included in the **products-completed operations hazard.**

* * *

13

**m.**   **Property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard**.

This exclusion does not apply if the damage work or the work out of which the damage arises was performed on **your** behalf by a subcontractor.

\* \* \*

**n.**   **Property damage** to **impaired property** or property that has not been physically injured, arising out of:

**(1)**   A defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**; or

**(2)**   A delay or failure by you or anyone acting on **your** behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to your product or your work after it has been put to its intended use.

(Form MU 6001 (01-98), p. 4 of 17.)

41.   GAIC excess policy no. GUM 1135 contains the following pertinent definitions:

**SECTION VI – DEFINITIONS**

**7.**   **Impaired property** means tangible property, other than **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or

**a.** It incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or

**b. You** have failed to fulfill the terms of a contract or agreement;

If such property can be restored to use by:

**(1)**   The repair, replacement, adjustment or removal of **your product** or **your work**; or

**(2) Your** fulfilling the terms of the contract or agreement.

\* \* \*

14

14463573v1  867725  56475

11. **Occurrence** means

    **a.**    With respect to **bodily injury** or **property damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions. This does not apply to **your** liability (other than under a contract or agreement) for **bodily injury** to your employees arising out of and in the course of employment by **you**; or

    **b.**    With respect to **your** liability (other than under a contract or agreement) for **bodily injury** to your employees arising out of and in the course of employment by **you**, **bodily injury** caused by accident or disease.

* * *

15.  **a.**    **Products-completed operations hazard** includes all **bodily injury** or **property damage** occurring away from premises **you** own or rent and arising out of your product or your work except:

        **(1)**    Products that are still in your physical possession; or

        **(2)**    work that has not yet been completed or abandoned.

    **b.**    **your work** will be deemed completed at the earliest of the following times:

        **(1)**    When all of the work called for in **your** contract has been completed.

        **(2)**    When all of the work to be done at the site has been completed if **your** contract calls for work at more than one site.

        **(3)**    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    **c.**    This hazard does not include **bodily injury** or **property damage** arising out of:

        **(1)**    The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the

14463573v1 867725 56475

**loading or unloading** of it; or

**(2)**  The existence of tools, uninstalled equipment or abandoned or unused materials

**16.  Property damages** means:

**a.**  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.**  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

* * *

**18.**  Self-insured retention means the amount in Item 3 of the Declarations.

* * *

**24.  Your work means:**

**a.**  Work or operations performed by you or on your behalf, and

**b.**  Materials, parts or equipment furnished in connection with such work or operations.

**Your work** includes:

**a.**  Warranties or representation made at any time with respect to the fitness, quality, durability, performance or use of **your work**; and

**b.**  The providing of or failure to provide warnings or instructions.

(Form MU 6001 (01/98), pp. 14-17 of 17.)

42.  GAIC excess policy no. GUM 1135 contains the following pertinent damage to work performed by subcontractors exclusion:

### EXCLUSION - DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF

This endorsement modifies insurance provided under the following:

14463573v1 867725 56475

**COMMERCIAL UMBRELLA POLICY**

Exclusion m. of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

**2.     Exclusions**

This insurance does not apply to:

**m.     Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

All other conditions remain unchanged.

(Form MU 61 49 (05 02), p 1 of 1.)

*MCC Excess Policy No: 04-XS-130632*
*MCC Excess Policy No: 04-XS-136699*

43.     MCC excess policies nos. 04-XS-130632 and 04-XS-136699 contain the following pertinent insuring agreement:

**SECTION I - INSURING AGREEMENTS**

\* \* \*

**COVERAGE   A.   BODILY   INJURY   AND   PROPERTY   DAMAGE LIABILITY**

**1.     Insuring Agreement**

**a.**     We will indemnify the **insured** for **ultimate net loss** in excess of the **retained limit** because of **bodily injury** or **property damage** to which this insurance applies. **We** will have the right to associate with the **underlying insurer** and the **insured** to defend any **claim** or **suit** seeking damages for bodily injury or **property damage** to which this insurance applies. But:

**(1)**     The amount **we** will indemnify for **ultimate net loss** is limited as described in SECTION IV LIMIT OF INSURANCE;

17

14463573v1 867725 56475

**(2) We** have a right to defend any **claims** or **suits** to which this insurance applies but which are not covered by any underlying insurance shown in the Declarations; **we** also have the right to defend such **claims** or **suits** if the applicable limit of **underlying insurance** is exhausted;

**(3)** At **our** discretion, **we** may investigate any **occurrence** and settle any **claim** or **suit** that **we** have a right to defend; and

**(4) Our** right to defend any existing or future **suits** end when **we** have exhausted the applicable Limit of Insurance in indemnification of judgments or settlements under Coverage A and B.

No other obligation or liability to indemnify or perform acts or services is covered unless explicitly provided for under SECTION II - DEFENSE.

**b.** It is agreed that:

**(1)** The **bodily injury** or **property damage** must occur during the policy period of this policy;

**(2)** With respect to **your** liability (other than under a contract or agreement) for **bodily injury** to **your** employees arising out of an in the course of their employment by **you**:

    **(a) Bodily injury** by disease must be caused or aggravated by the conditions of the employment; and

    **(b)** An employee's last day of last exposure to conditions causing or aggravating such a disease must occur during the policy period of this policy.

**(3)** Damages because of **bodily injury** include damages sought by any person or organization for care or loss of services resulting at any time from the **bodily injury**;

**(4)** The **bodily injury** or **property damage** must be caused by an **occurrence**; and

18

**(5)**   The **occurrence** must take place in the **coverage territory**.

(Form MU 60 01 (01 03), p. 1 of 15.)

44.   MCC excess policies nos. 04-XS-130632 and 04-XS-136699 contain the following pertinent exclusions:

**2.   Exclusions**

This insurance does not apply to:

**b.**   Bodily injury or property damage for which the insured is obligated to pay damages by reason of the assumption or liability in a contract or agreement.  This exclusion does not apply to liability for damages:

(1)   Assumed in contract or agreement that is an **insured contract** provided the **bodily injury** or **property damage** occurs subsequent to the execution of the contract or agreement; or

(2)   The **insured** would have in the absence of the contract or agreement.

\* \* \*

**k.**   **Property damage** to:

(1)   Property **you** own;
(2)   Premises **you** sell, give away or abandon, if the **property damage** arises out of any part of those premises;
(3)   That particular part of real property on which **you** or any contractor or subcontractor working directly or indirectly on **your** behalf is performing operations, if the **property damage** arises our of those operation; or
(4)   That particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are **your work** and were never occupied, rented or held for rental by **you.**

Paragraph (3) and (4) of this exclusion do not apply to liability assumed under a railroad sidetrack agreement.

Paragraph (4) of this exclusion does not apply to **property damage** included in the **products-completed operations hazard.**

\* \* \*

**m.**   **Property damage** to **your work** arising out of it or any part of it and included in

the **products completed operations hazard**.

This exclusion does not apply if the damage work or the work out of which the damage arises was performed on your behalf by a subcontractor.

\* \* \*

**n.** **Property damage** to **impaired property** or property that has not been physically injured, arising out of

    (1)    A defect, deficiency, inadequacy or dangerous condition in your **product** or **your work**, or

    (2)    A delay or failure by **you** or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

45.    MCC excess policies nos. 04-XS-130632 and 04-XS-136699 contain the following pertinent definitions:

### SECTION VI - DEFINITIONS

\* \* \*

**7.** **Impaired property** means tangible property, other than **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or

    **a.** It incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.** **You** have failed to fulfill the terms of a contract or agreement;

If such property can be restored to use by:

    **(1)**    The repair, replacement, adjustment or removal of **your product** or **your work**; or

    **(2)**    **Your** fulfilling the terms of the contract or agreement.

\* \* \*

**11. Occurrence means**:

    **a.** With respect to **bodily injury** or **property damage**, an accident, including continuous or repeated exposure to substantially the same general harmful

20

conditions. This does not apply to your liability (other than under a contract or agreement) for **bodily injury** to your employees arising out of and in the course of employment by **you;** or

**b.** With respect to **your** liability (other than under a contract or agreement) for **bodily injury** to **your** employees arising out of and in the course of employment by **you**, **bodily injury** caused by accident or disease.

* * *

**15.  a.      Products-completed operations hazard** includes all **bodily injury** or **property damage** occurring away from premises you own or rent and arising out of **your product** or **your work** except:

    **(1)**      Products that are still in your physical possession; or

    **(2)**      Work that has not yet been completed or abandoned.

**b**.      **Your work** will be deemed completed at the earliest of the following times:

    **(1)**      When all of the work called for in **your** contract has been completed;

    **(2)**      When all of the work to be done at the site has been completed if **your** contract calls for work at more than one site;

    **(3)**      When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**c**.      This hazard does not include **bodily injury** or **property damage** arising out of:

    **(1)**      The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the **loading** or **unloading** of it; or

    **(2)**      The existence of tools, uninstalled equipment or abandoned or unused materials.

**16. Property damage means**:

    **a.**      Physical injury to tangible property, including all resulting loss of use of

21

that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.**     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

**17.**  Retained limit means the greater of:

**a.** The sum of amounts applicable to any claim or suit from:

**(1)**     Underlying insurance, whether such underlying insurance is collectible or not; and

**(2)**     Other collectible primary insurance; or

**b.** The self-insured retention.

**18.**  **Self-insured retention means** the amount in Item 3 of the Declarations.

\* \* \*

**24.**  **Your work** means:

**a.**     Work or operations performed by **you** or on **your** behalf; and

**b.**     Materials, parts or equipment furnished in connection with such work or operations.

**Your work** includes:

**a.**     Warranties or representation made at any time with respect to the fitness, quality, durability, performance or use of **your work**; and

**b.**     The providing of or failure to provide warnings or instructions.

(Form MU 60 01 (01 03), pp.8-15 of 15)

## COUNT I

### NO COVERAGE UNDER THE
### DAMAGE TO PROPERTY EXCLUSION

46.    MCC/GAIC reallege paragraphs 1 through 45 as paragraph 46 of Count I.

47.     Coverage under the Primary Policies is precluded by exclusions j(5) and J(6), and under the Excess Policies by exclusion k(3) and k(4) based upon evidence adduced at trial that the damages were discovered prior to the completion of construction.

48.     In view of the forgoing there is an actual controversy between the parties and this court has the power to decide the rights and obligations of the parties, if any, under the MCC/GAIC Policies.

WHEREFORE, Mid-Continent Casualty Company and Great American Insurance Company request this Court to:

a.      Take jurisdiction over this matter and find and declare that MCC/GAIC does not owe a duty to indemnify C-D Jones; and

b.      Enter any other order consistent with the evidence and law as the circumstances merit.

## COUNT II

### NO PROPERTY DAMAGE UNDER ANY OF
### THE POLICIES

49.     MCC/GAIC reallege paragraphs 1 through 45 as paragraph 49 of Count II.

50.     There is no coverage under the policies to the extent the jury did not award damages for property damage or damages to repair and replace defective work.

51.     In view of the forgoing there is an actual controversy between the parties and this court has the power to decide the rights and obligations of the parties, if any, under the policies.

WHEREFORE, Mid-Continent Casualty Company and Great American Insurance Company request this Court to:

a.      Take jurisdiction over this matter and find and declare that MCC/GAIC do not owe a duty to indemnify C-D Jones to the extent the jury did not award damages for property

23

damage; and

    b.      Enter any other order consistent with the evidence and law as the circumstances merit.

## COUNT III

### THE APPLICATION OF "DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF" EXCLUSION PRECLUDES COVERAGE UNDER MCC PRIMARY POLICY NO. 04-GL-000110981

52.     MCC realleges paragraphs 1 through 45 as paragraph 52 of Count III.

53.     C-D Jones had done work on its behalf on the Home by subcontractors.

54.     According to the evidence adduced at trial, the Home was damaged as a result of C-D Jones' subcontractors' work on the Home.

55.     Based on the foregoing, an actual controversy exists among the parties and this Court has the power to declare the rights and liabilities of the parties.

    WHEREFORE, Mid-Continent Casualty Company requests this Court to:

    a.      Find and declare that MCC has no duty to indemnify C-D Jones for any damages related to C-D Jones' own work or work performed on its behalf by subcontractors; and

    b.      Award any other relief that the Court feels is appropriate under the evidence and circumstances.

## COUNT IV

### THE APPLICATION OF "DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF" EXCLUSION PRECLUDES COVERAGE UNDER EXCESS POLICY NO. GUM 1135

56.     GAIC realleges paragraphs 1 through 45 as paragraph 56 of Count IV.

57.     According to the evidence adduced at trial, the Home was damaged as a result of C-D Jones' subcontractors' work on the Home.

14463573v1 867725 56475

58.    According to the evidence adduced at trial, the Home was damaged as a result of C-D Jones' subcontractors' work on the Home.

59.    Based on the foregoing, an actual controversy exists among the parties and this Court has the power to declare the rights and liabilities of the parties.

WHEREFORE, Great American Insurance Company requests this Court to:

a.    Find and declare that GAIC has no duty to indemnify C-D Jones for any damages related to C-D Jones' own work or work performed on its behalf by subcontractors; and

b.    Award any other relief that the Court feels is appropriate under the evidence and circumstances.

## COUNT V

### THE APPLICATION OF THE
### CONTRACTUAL LIABILITY EXCLUSION
### PRECLUDES COVERAGE UNDER ALL OF
### THE MCC PRIMARY POLICIES

60.    MCC realleges paragraphs 1 through 45 as paragraph 60 of Count V.

61.    There is no coverage under the MCC Primary Policies because the contractual liability exclusion applies.

62.    In view of the foregoing, there is an actual and present controversy between the parties, and this Court has the power to declare the rights and liabilities of the parties under the MCC Primary Policies.

WHEREFORE, Mid-Continent Casualty Company requests this Court to:

a.    Take jurisdiction over this matter and find and declare that MCC does not owe a duty to indemnify C-D Jones; and

b.    Enter any other order consistent with the evidence and law as the circumstances merit.

## COUNT VI

## THE APPLICATION OF THE CONTRACTUAL
## LIABILITY EXCLUSION PRECLUDES COVERAGE
## UNDER THE EXCESS POLICIES

63.     MCC/GAIC reallege paragraphs 1 through 45 as paragraph 63 of Count VI.

64.     There is no coverage under the MCC/GAIC Excess Policies because the contractual liability exclusion applies.

65.     In view of the foregoing, there is an actual and present controversy between the parties, and this Court has the power to declare the rights and liabilities of the parties under the Policies.

WHEREFORE, Mid-Continent Casualty Company and Great American Insurance Company requests this Court to:

a.     Take jurisdiction over this matter and find and declare that MCC/GAIC do not owe a duty to indemnify C-D Jones; and

b.     Enter any other order consistent with the evidence and law as the circumstances merit.

## COUNT VII

## THE APPLICATION OF THE "DAMAGE TO IMPAIRED
## PROPERTY" EXCLUSION PRECLUDES COVERAGE
## UNDER THE MCC PRIMARY POLICIES.

66.     MCC realleges paragraphs 1 through 45 as paragraph 66 of Count VII.

67.     There is no coverage under the MCC Primary Policies to the extent that property damage, if any, occurred to property not physically injured arising from C-D Jones' defective work and for C-D Jones' delay or failure to perform under the construction contract.

68.     Based on the foregoing, an actual controversy exists among the parties and this

26

Court has the power to declare the rights and liabilities of the parties.

WHEREFORE, Mid-Continent Casualty Company requests this Court to:

a.    Find and declare that MCC has no duty to indemnify C-D Jones for any damages related to property not physically injured arising from C-D Jones' defective work and for C-D Jones' delay or failure to performed under the construction contract; and

b.    Award any other relief that the Court feels is appropriate under the evidence and circumstances.

**COUNT VIII**

**THE APPLICATION OF THE "DAMAGE TO IMPAIRED PROPERTY" EXCLUSION PRECLUDES COVERAGE UNDER THE EXCESS POLICIES.**

69.    MCC/GAIC reallege paragraphs 1 through 45 as paragraph 69 of Count VIII.

70.    There is no coverage under the GAIC/MCC Excess Policies to the extent that property damage, if any, occurred to property not physically injured arising from C-D Jones' defective work and for C-D Jones' delay or failure to perform under the construction contract.

71.    Based on the foregoing, an actual controversy exists among the parties and this Court has the power to declare the rights and liabilities of the parties.

WHEREFORE, Mid-Continent Casualty Company and Great American Insurance Company request this Court to:

a.    Find and declare that MCC/GAIC have no duty to indemnify C-D Jones for any damages related to property not physically injured arising from C-D Jones' defective work and for C-D Jones' delay or failure to performed under the construction contract; and

b.    Award any other relief that the Court feels is appropriate under the evidence and circumstances.

## COUNT IX

### THE POLICIES DO NOT AFFORD COVERAGE
### FOR PUNITIVE DAMAGES

72.    MCC/GAIC reallege paragraphs 1 through 45 as paragraph 72 of Count IX.

73.    The Daakes received $100,000 against C-D Jones for punitive damages.

74.    There is no coverage under the MCC/GAIC Policies for punitive damages because C-D Jones' conduct does not constitute an occurrence under the MCC/GAIC Policies.

75.    There is no coverage under the MCC/GAIC Policies for punitive damages because C-D Jones' conduct was expected or intended.

76.    Punitive damages are also not covered under any of the policies because it is against public policy.

77.    Based on the foregoing, an actual controversy exists among the parties and this Court has the power to declare the rights and liabilities of the parties.

WHEREFORE, Mid-Continent Casualty Company and Great American Insurance Company request this Court to:

a.    Find and declare that MCC/GAIC have no duty to indemnify C-D Jones for punitive damages under its respective policies or applicable law; and

b.    Award any other relief that the Court feels is appropriate under the evidence and circumstances.

## COUNT X

### THE POLICIES DO NOT AFFORD COVERAGE
### FOR ATTORNEY'S FEES

78.    MCC/GAIC reallege paragraphs 1 through 45 as paragraph 78 of Count X.

79.    There is no coverage under the MCC/GAIC Policies for attorney's fees as they are

14463573v1 867725 56475

not damages.

80.     In view of the foregoing, there is an actual and present controversy between the parties, and this Court has the power to declare the rights and liabilities of the parties under the Policies.

WHEREFORE, Mid-Continent Casualty Company   and Great American Insurance Company requests this Court to:

a.     Take jurisdiction over this matter and find and declare that MCC/GAIC do not owe a duty to indemnify the Daakes for attorney's fees in the underlying action; and

b.     Enter any other order consistent with the evidence and law as the circumstances merit.

Dated: December 22, 2009.

Ronald L. Kammer
Florida Bar No. 360589
rkammer@hinshawlaw.com
HINSHAW & CULBERTSON LLP
9155 S. Dadeland Boulevard
Suite 1600
Miami, Florida 33156-2741
Telephone: 305-358-7747
Facsimile: 305-577-1063
Attorneys for Plaintiff

owe a duty to indemnify the Daakes for attorney's fees in the underlying action; and

      b.     Enter any other order consistent with the evidence and law as the circumstances

merit.

Dated: December 22, 2009.

_____

Ronald L. Kammer
Florida Bar No. 360589
rkammer@hinshawlaw.com
HINSHAW & CULBERTSON LLP
9155 S. Dadeland Boulevard
Suite 1600
Miami, Florida 33156-2741
Telephone: 305-358-7747
Facsimile: 305-577-1063
Attorneys for Plaintiff